UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROSA PINA ET AL., : | |
|     Plaintiffs, : | |
| : | CIVIL ACTION NO. |
| v. : | 07-cv-0657(JCH) |
| : | |
| CITY OF HARTFORD, ET AL., : | |
|     Defendants. : | APRIL 28, 2009 |
| : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 37)**

**I.     INTRODUCTION**

Plaintiffs, Rosa Pina, Moses Torres, individually and on behalf of their minor children, Rosemarie Torres, Genesis Torres, and Isaiah Torres (collectively, "plaintiffs"), bring this action against the defendants, City of Hartford, Chief of Police Patrick Harnett, Officer Martin Miller, and Officer Tishay Johnson (collectively "defendants")[1], alleging violation of their constitutional rights under the Fourth Amendment of the United States Constitution pursuant to 18 U.S.C. § 1983, Article First, Sections 7 and 9 of the Connecticut Constitution, section 52-557n of the Connecticut General Statutes, assault, false imprisonment, and intentional and negligent infliction of emotional distress under the common law of Connecticut. Plaintiffs also seek indemnification of the police officers by the City of Hartford. This action stems from a search and seizure, which turned out to be fruitless, executed by the defendants at the home of the plaintiffs. Id.

---

[1] Plaintiffs also name Officer John Doe #3 and Officer John Doe #4 as defendants, though they have yet to identify them. The plaintiffs state that Officer Miller identified possible officers at his deposition on May 18, 2009, and that they are "currently investigating whether they need to be cited as party defendants." See Mem. in Opp. at 17.

1

The defendants move for summary judgment on Counts One, Two, Five, and Six.[2] Plaintiffs oppose summary judgment.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

---

[2] Defendants assert that Count Eight is also implicated to the extent the derivative liability of the City of Hartford to indemnify the defendants applies to these counts.

2

### III.  FACTUAL BACKGROUND[3]

In the spring of 2005, Detectives Miller and Johnson[4] were assigned to the Vice and Narcotics Division of the Hartford Police Department.  During this time, they were both investigating complaints of open air drug activity in and around the Belden Street area which is located in the north end of the City of Hartford.  Based on the complaints they were receiving, they set up surveillance in and around 17-19 Belden Street between the dates of April 28, 2005 and May 3, 2005.  Around this time they also set up surveillance at 45 Belden Street.  Though Detectives Miller and Johnson were partners, Johnson primarily focused on the 45 Belden Street surveillance and Miller focused on the 17-19 Street surveillance.

On May 4, 2005, Miller and Johnson jointly completed and signed an Affidavit and Application for a Search and Seizure Warrant ("Application").  The target apartment for the Application was 17-19 Belden Street, apartment 2-A.  The Application was written from the perspective of both Detectives (i.e., they used the pronoun "we" when describing the observations that led to the Application).  It is disputed as to whether both detectives actually made these observations.  Plaintiffs claim that, because Detective Johnson focused his surveillance on a different building, he could not have made observations stated in the Application regarding 17-19 Belden Street.  Nonetheless, the Application represents that they both made the observations.  During

---

[3] For the purposes of the instant Motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiffs, where there is evidence to support their allegations.

[4] Though the plaintiffs identify Miller and Johnson as "Officers," the defendants, in their depositions, indicate that their appropriate title is "Detective."

the surveillance, the detectives stated that they both observed "numerous drug dependent persons approach the front steps of 17-19 Belden Street." Mem. in Supp. Exh. 2. They also stated that they would see these persons enter the front door of the building and would climb the steps to the second floor. After several minutes, these persons would be seen exiting the door they had entered and exiting the area quickly.

     As a result of these observations, the detectives met up with a "confidential and reliable" informant for the purpose of making a controlled purchase from a second floor apartment at 17-19 Belden Street. Id. After furnishing the confidential informant with monies from the Hartford Police Narcotics Fund, the detectives then followed the confidential information to the target location and observed him/her enter the building. The informant was in the building for two to three minutes before the detectives observed him/her exit the building. The detectives then met up with the informant who handed over the drugs to the detectives and told them that when he/she entered the building he/she walked up to the second floor. At this point, the informant was met by a male who he/she described as "a dark skinned Hispanic male, 5' 4" tall, weighing 170 pounds." Id. ¶ 10. The informant also said that the male party directed him/her to enter into the apartment which was marked "2-A." Id. According to the confidential informant, it was here that the drug transaction took place. As a result of this surveillance and controlled purchase, which was detailed in the Application, the detectives requested a search and seizure warrant be issued for 17-19 Belden Street, second floor, west side, apartment 2-A. Id. at ¶ 18. A search and seizure warrant was granted for a period of two weeks by order of the court dated May 4, 2005. The apartment that was the object of the warrant was the home of the plaintiffs.

On May 12, 2005, Miller and Johnson, together with other detectives in the Hartford Police Department Vice and Narcotics Division, implemented an Operational Plan to execute search warrants at two addresses, 45 Belden Street and 17-19 Belden Street. The objective of the Operational Plan was to execute safely a search and seizure warrant at 45 Belden Street, and then, after entry was made at that address, to execute another search warrant at 17-19 Belden Street.

Miller along with a group of other detectives and one canine, conducted a search of 17-19 Belden Street. Detective Johnson did not participate in this search. The detectives knocked on the door and announced themselves in the manner that Detective Miller had been trained, which included various officers yelling "Hartford Police, search warrant, search warrant, Hartford Police." After a few seconds, the detectives knocked down the front door of the apartment with a battering ram.

When the detectives entered the apartment, they were armed and their guns were drawn. The plaintiffs were all in the apartment.[5] Mrs. Pina and Mr. Torres were handcuffed, but the children were not. At least one of the children, Rosemarie Torres, was sleeping when the detectives entered, and one of the detectives put the barrel of a gun in her face. Aff. Pina and Torres at ¶ 15. The detectives searched the apartment during which personal property was thrown around the house. The detectives also screamed profanities and threatened to shoot the plaintiffs if they moved. Id. at ¶ 14. Also while in the apartment the detectives went into the kitchen and ate the plaintiffs' food. Id. at ¶ 17. The detectives were in the apartment for a little over an hour. Torres

---

[5] Detective Miller only remembers two children in the apartment, but the plaintiffs claim all three children were there. Miller Dep. at 22.

was handcuffed for the duration of the time the detectives were in the apartment. Mrs. Pina was handcuffed for a shorter period of time because Detective Miller recalls her holding one of the children while the child was playing with the dog. The detectives did not find any drugs in the apartment nor was anyone arrested as a result of the search.

The plaintiffs assert that the detectives searched the wrong apartment, and they should have been aware of that as soon as they entered the apartment. They assert that they were looking for a man named Moses and, while one of the plaintiffs is named Moses, he did not fit the description in the Application. They claim that there is another Moses that fits that description that lives above them in apartment 3-A. They further claim that the detectives admitted to their mistake before they left the apartment. Id. ¶ 12.

## IV.   DISCUSSION

### A.   Fourth Amendment Claims

The plaintiffs allege two claims under the Fourth Amendment: unreasonable search and seizure and excessive force. Defendants argue that both of these claims are without merit.

#### 1.   Search and seizure

Plaintiffs assert that the execution of the search warrant in their apartment on May 12, 2005, was a violation of their right to be free from unreasonable search and seizure. Specifically, they allege that defendants, Miller, Johnson, John Doe #3, and John Doe #4 violated this right because they "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in their affidavit or omitted material information, and that such false or omitted information was necessary to the

finding of probable cause." Mem. in Opp. at 10.  Plaintiffs allege that the detectives should have known that the target of the investigation was not in apartment 2-A, that the person they were looking for was, in fact, located in apartment 3-A.  Id.  Plaintiffs also challenge the lawfulness of the search warrant, arguing that it was not supported by probable cause because the confidential informant was not reliable.  Defendants argue that they did not make a false statement or omit material information in the Application and there was probable cause to issue the search warrant.

As an initial matter, only two detectives signed the Application for a search warrant, Miller and Johnson, and no other facts have been presented that would suggest anyone other than Miller and Johnson completed the Application.  Thus, any claim against John Doe #3 and John Doe #4 with respect to the search warrant is without merit and must be dismissed.[6]

      a.    Misrepresentations in the Application

Plaintiffs argue that the defendants made false statements in the Application that were material to the finding of probable cause.  They assert that had the detectives not misled Judge Keller, who signed the warrant on May 4, 2005, she would not have found the probable cause necessary to issue the warrant.  Defendants assert that they did not mislead the magistrate. [7]

---

[6] The claims made in Count One against the remaining defendants, City of Hartford and Hartnett, are discussed in Part I.A.3, infra.

[7] The Second Circuit has noted that review of a probable cause determination by a magistrate judge differs from a review based on whether officers omitted material information from a warrant affidavit. See Velardi v. Walsh, 40 F.3d 569, 574 n.1 (2d Cir. 1994).

> "[A] Court's review of the magistrate's prior determination must be deferential, and it is therefore limited to ensuring that a 'substantial basis' underlay the magistrate's conclusion that probable cause existed.  In contrast, where officers procuring a warrant have deliberately misled

Plaintiffs claim that Miller and Johnson "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in their affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." Mem. in Opp. at 10. "A section 1983 plaintiff challenging a warrant on this basis must make the same showing that is required at a suppression hearing under Franks v. Delaware, 438 U.S. 154, 155-6 (1978)." Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). In order to succeed on such a challenge,

> "the plaintiff[s] must make a 'substantial showing' that the affiant[s] knowingly and intentionally, or with reckless disregard for the truth, made a false statement in [their] affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'"

Id. "Unsupported conclusory allegations of falsehood or material omission cannot support a Franks challenge." Id.

"To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material, 'a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003) (quoting United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000). Thus, "[d]isputed issues are not material if, after crossing out any allegedly false information and supplying omitted facts, the 'corrected affidavit' would have supported a finding a probable cause." Velardi, 40 F.3d at 573.

---

the magistrate about relevant information, no magistrate will have made a prior probable cause determination on the bases of the 'corrected affidavits.' In such circumstances, [courts] do not review a magistrate's prior determination of probable cause, but rather try to predict whether a magistrate would have found probable cause if the had been presented with truthful information."

Id. (internal citations omitted).

8

> "In sum, to survive the defendants' motion for summary judgment on this issue, the plaintiffs must satisfy three conditions: they must have made an offer of proof supporting specific allegations of deliberate or reckless misrepresentation, as required by Franks; the alleged misrepresentations must be legally relevant to the probable cause determination; and there must be a genuine issue of fact about whether the magistrate would have issued the warrant on the basis of [a] 'corrected affidavit[].'"

Id. at 574.

The plaintiffs allege that one of the false statement made in the Application was that the target apartment was 2-A, rather than 3-A. Even assuming that the Detectives Miller and Johnson made a mistake and really intended to search apartment 3-A, there is nothing indicating that they knew of that prior to submitting the Application. The affiants relied on their training and experience, their own observations, and the information they received from the confidential informant in submitting the Application. Plaintiffs offer no evidence to place this in dispute.

Plaintiffs allege that the information regarding the observations made by the detectives were also false statements because the two detectives focused on different buildings; thus, the representation that they both observed drug dependent individuals enter and exit 17-19 Belden Street is unlikely. In the Application, Miller and Johnson stated that they "observed numerous drug dependent persons" enter the target building and go to the second floor. Def.'s Mem. in Supp. Exh. 2 at ¶ 3. Indeed, the Application was written from the perspectives of the detectives jointly. They indicated that they both made observations at 17-19 Belden. It is also true that, while Detective Miller focused on 17-19 Belden, his partner Detective Johnson focused on 45 Belden Street. Plaintiffs argue that, as a result of this, it cannot be true that they both observed the suspicious activity at 17-19 Belden Street. In his deposition, Detective Miller stated that

9

"the majority of [his] focus was on 17." Miller Dep. at 13. He did not say that he solely focused on one building. The buildings were also in close proximity to each other so the fact that they each focused on one building does not necessarily mean that they did not spend time investigating and observing the other buildings. See Johnson Dep. at 15 ( stating "because the apartments were so close together, he could have been doing surveillance on that apartment while I was right down the street doing surveillance on my apartment."). Because there is nothing in the record that suggests that is was impossible for Detective Johnson to observe 17-19 Belden Street, it cannot be said that their sworn affidavit was false. More importantly, however, even if the Application was corrected to reflect that it was only Detective Miller that made these observations, it would not have affected the probable cause determination. In other words, even if the court determines that only Detective Miller made those observations (and excises the words that both detectives made these observations), the Application still presents sufficient information to support a finding of probable cause. See United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998).

Viewing the evidence in the light most favorable to the plaintiffs, there is no genuine dispute that a magistrate would have issued the warrant on the basis of the "corrected affidavit." Velardi, 40 F.3d at 573. Thus, because there is no material issue of fact, the plaintiffs' claim that the detectives knowingly and intentionally made a false statement in the Application cannot survive summary judgment.

      b.     Probable Cause

Plaintiffs also argue that the issuance of the search warrant was not supported by probable cause because the confidential informant was not reliable and, as a result,

the detectives should not have relied on the informant.[8]  Thus, the sufficiency of the warrant Application turns on the reliability of the information supplied by the confidential informant.  In order to sign the warrant, Judge Keller found that the affiants, Miller and Johnson, established that probable cause existed to search apartment 2-A at 17-19 Belden Street.  "[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

Probable cause is "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal quotation marks omitted).  The existence of probable cause must be determined in light of the totality of the circumstances.  Id. at 230-1.

"When the affidavit in support of the search warrant is based on information obtained from a confidential informant, 'courts assess the information by examining the totality of the circumstances' bearing upon its reliability."  United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).  To evaluate the "'totality of the circumstances,' . . . the court may consider . . . an informant's veracity, reliability and basis of knowledge, and

---

[8] Plaintiffs further allege that, once the detectives entered the apartment, it should have been apparent to them that they were not in the correct apartment.  This latter argument is irrelevant to the question the court is now addressing because the question of probable cause comes prior to the execution of the warrant: what the detectives learned after the warrant was executed (i.e., during the search) is not relevant to probable cause.  See Maryland v. Garrison, 480 U.S. 79, 81 (1987) (stating "we must judge the constitutionality of [the detectives'] conduct in light of the information available to them at the time they acted.  Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued.")

the extent to which an informant's statements - even about a suspect's innocent activities - are independently corroborated." Gagnon, 373 F.3d at 235 (citing Gates, 462 U.S. at 238; Caldarola v. Calabrese, 298 F.3d 156, 162-63 (2d Cir. 2002) (internal citations omitted)).

In light of Gates, "it is clear that [the reliability or veracity of the informant and the basis for the informant's knowledge] are but two of several relevant considerations when determining the existence of probable cause based on an informant's tip," and that a "deficiency in one may be compensated for, in determining the overall reliability of a tip by a strong showing as to the other, or by some other indicia of reliability." Caldarola, 298 F.3d at 162-63 (citing Gates, 462 U.S. at 228-29).

For example, the Second Circuit has recognized that "it is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy." United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993) (citing Gates 462 U.S. at 237–38). "Even where an independent informant has no proven record, if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration." Id. "Moreover, [a]n informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause." Wagner, 989 F.3d at 73.

In this case, the totality of the circumstances presented to Judge Keller supported probable cause. Here, Detective Miller testified that they would not use confidential informants to do search warrants without them having experience being a "street rep" first. Miller Dep. at 26. In other words, though neither Miller or Johnson were able to remember at their depositions who the confidential informant was, they

12

both testified that they had used the informant before.  Id.  Further, the detectives stated in the Application that they independently observed drug dependent persons climb the stairs to the second floor and then exit within a few minutes.  Def.'s Mem. in Supp. Exh. 2 at ¶ 3.  The detectives' personal observations are independent corroboration of the information received by the confidential informant.  As such, plaintiffs' argument that there was not sufficient probable cause to issue the warrant because the confidential informant was not reliable fails.

Thus, the application and execution of the search warrant did not violate the plaintiffs' constitutional rights pursuant to the Fourth Amendment.  Defendants Miller and Johnson are entitled to summary judgment on the unlawful search and seizure claim.

    2.    Excessive Force

Plaintiffs' second claim under the Fourth Amendment is that detectives Miller, Johnson, John Doe #3, and John Doe #4 violated their right to be free from excessive force.  As an initial matter, it is undisputed that Detective Johnson did not participate in the search of plaintiffs' apartment.  See Def.'s 56(a)(1) Stat. ¶ 13; Pl.'s 56(a)(2) Stat. ¶ 13.  Thus, summary judgment is granted for him on any claim of excessive force.  With respect to the remaining detectives, plaintiffs argue that they used excessive force and acted in an unreasonable manner when they screamed profanities, threatened to shoot the plaintiffs if they moved, pointed the barrel of the gun in each of the plaintiff's faces, including a minor child while she was sleeping, destroyed the property, and ate their food.  Mem. in Opp. at 13.

"To establish a section 1983 claim for excessive force, plaintiffs must show that

the forced used was excessive or unreasonable in light of the circumstances." Lynch, 567 F.Supp.2d at 467. "[O]fficers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted." Muehler v. Mena, 544 U.S. 93, 98 (2005) (citing Michigan v. Summers, 452 U.S. 692 (1981)). "Inherent in [that] authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." Id. The use of handcuffs to detain the occupants of the target of a search warrant is reasonable when the "governmental interests outweigh the marginal intrusion." Id. at 99. Moreover, the execution of a warrant to search for drugs, which was the case here, "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." Summers, 452 U.S. at 702-703. Here, both Mr. Torres and Mrs. Pina were handcuffed during the search of their apartment. None of the children were handcuffed. Further, in the Application, the detectives stated that generally drug dealers are armed with firearms or other weapons. Mem. in Supp. Exh 2 at ¶ 16. Accordingly, the warrant also authorized the detectives to search for weapons which heightened the government's interest in handcuffing the plaintiffs. Muehler, 544 U.S. at 100. Thus, it was not unreasonable, in the interest of safety, for the detectives to detain the plaintiffs and handcuff Mr. Torres and Mrs. Pina while they conducted the search. See, e.g., id. at 98 (stating that "minimizing the risk of harm to officers" is one of "three legitimate law enforcement interests that provide substantial justification for detaining an occupant.")

Furthermore, the fact that the officers had their guns drawn and pointed at the plaintiffs is not unreasonable during the execution of a search warrant. See Lynch, 567 F.Supp.2d 459 ("officers' decision to draw their weapons while searching the Residence

for guns, drugs, and a drug dealer was objectively reasonable.)  Similarly, the allegation of "unnecessary property destruction," Mem in Opp at 13, is not enough to mount a claim of excessive force.  "[I}t is well recognized that officers executing search warrants on occasion must damage property in order to perform their duty." Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995) (internal citation omitted).  Before an officer can be liable for property damage resulting from a lawful search, the plaintiff must establish that the police acted unreasonably or maliciously in bringing about the damage.  Id.  Plaintiffs have put forth no evidence of the destruction of property.  Detective Miller admits that personal property was thrown around during the search, see Miller Dep. at 20, but there is no indication that the detectives damaged the plaintiff's property "beyond what was necessary to effectuate a complete search" of the apartment.  Lynch, 567 F. Supp. 2d at 467 n5.  As previously stated, in order to survive summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion.  With respect to the destruction of property, the plaintiffs have presented evidence based upon which a jury could find in their favor.  All that the plaintiffs claim is that the defendants "caused unnecessary property destruction," but nothing more specific.  This is not sufficient to survive summary judgment.[9]

---

[9] Similarly, the plaintiffs make a conclusory assertion without providing support that the defendants caused them physical injury.  Aff. Torres and Pina at ¶ 18.  While the deposition provided by defendants allude to possible physical injury (i.e., Detective Miller was showed a picture of the plaintiff with a bruise), see Miller Dep. at 21, the plaintiffs do not provide evidence supporting this allegation (e.g., they do not provide the court with the photo nor state who was injured, how they were injured, to what extent they were injured, or when the person in the photo was injured).

Part of the plaintiffs' claim is that the detectives screamed profanities when they entered the apartment and threatened to shoot them if they moved. The plaintiffs cite no authority stating that use of profanities and threats are alone enough to mount an excessive force claim. Moreover, "threat of force does not support an excessive force claim." Smith v. Fields, 2002 U.S. Dist. LEXIS 3529 *17 (S.D.N.Y. 2002) (finding that plaintiff's allegation that he was dragged out of the car, thrown to the ground, and threatened at gunpoint, does not constitute the use of excessive force.) The court sees no evidence in the record that would support a finding that any use by the detectives of profanities and threat of force in this case was unreasonable.

Finally, the plaintiffs claim that the fact that the officers ate their food supports their claim of excessive force. Even if this allegation were true, the court knows of no authority that recognizes this as a constitutional violation. Plaintiffs cite none.

For the foregoing reasons, the court finds that the plaintiffs have not come forward with evidence that creates a material issue of fact on their excessive force claim. Therefore, the defendant detectives are entitled to summary judgment on that claim.[10]

### 3. Municipal liability

Plaintiffs assert that defendants City of Hartford and Police Chief Patrick Hartnett are liable for the detectives' constitutional violations because they "had in effect de facto policies, practices, and customs exhibiting deliberate indifference to the constitutional rights of citizens and residents of Hartford, which were a direct and

---

[10] Because the court has concluded that, in the absence of material issues of fact, the plaintiffs' constitutional claims against the officer defendants fail as a matter of law, it need not consider these defendants' defense of qualified immunity.

proximate cause of the unconstitutional conduct" of defendants Miller, Johnson, John Doe #3, and John Doe #4. Having concluded that the defendant detectives did not violate plaintiffs' constitutional rights, summary judgment as to plaintiffs' section 1983 claim against the City of Hartford and Chief Hartnett is granted. See Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999) (granting summary judgment to town when no constitutional violation was found) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978)).

### B. State Law Claims

Plaintiffs assert claims against the defendants for violation of Article First, Sections 7 and 9 of the Connecticut Constitution, for recklessness and negligence under section 52-557n of the Connecticut General Statutes, negligent and intentional infliction of emotional distress, false imprisonment, and assault under the common law of Connecticut. See Amended Complaint Counts Two, Three, Four, Five, Six, and Seven. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966).

While dismissal of the state claims is not absolutely mandatory, Rosado v. Wyman, 397 U.S. 397, 403-05 (1970); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial. Gibbs, 383 U.S. at 726. When "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n. 7; see also DiLaura v. Power Authority of New York, 982 F.2d 73, 80 (2d Cir. 1992); Baylis v. Marriott Corp., 843 F.2d 648, 664-65 (2d Cir. 1988); Indep. Bankers Ass'n v. Marine Midland Bank, 757 F.2d 453, 464 (2d Cir. 1985).

Because this court has granted summary judgment as to all of the plaintiffs' federal law claims, it declines to exercise pendent jurisdiction over his remaining state law claims.[11]  The plaintiffs' state law claims are therefore dismissed without prejudice.

## V.     CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment (Doc. No. 37) is **GRANTED** with respect to the federal law claims in Count One and **DENIED** as to the remaining state law claims, which the court dismisses without prejudice.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of April, 2009.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[11] It bears noting that defendants only moved to dismiss counts One, Two, Five, and Six though the court is dismissing all the remaining claims as well because they are all state law claims.